IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT WHITLOCK**, | **CIVIL ACTION** |
| Plaintiff, | |
| v. | NO. 2:20-cv-00373-KSM |
| **ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY**, | |
| Defendant. | |

## MEMORANDUM

**MARSTON, J.** October 13, 2022

Plaintiff Robert Whitlock was injured in a car accident caused by a negligent driver. (Doc. No. 17 at 1.) The tortfeasor's insurance company tendered her full policy limits, and Whitlock filed this action against his own insurance company, Defendant Allstate Fire and Casualty Insurance Company, seeking additional recovery through the underinsured motorist provisions of his insurance policy. (Doc. No. 1.) The parties agree that the tortfeasor, who is not a party to this action, is at fault for the accident. (Doc. No. 17 at 1.) The only questions for trial are the extent of Whitlock's injuries and whether those injuries were caused by the accident. (*Id.*) Trial is scheduled to begin on October 25, 2022. (Doc. Nos. 21 & 31.[1]) During the final pretrial conference on October 6, 2022, the parties identified two issues that need resolution before that date. First, Allstate argues that Whitlock and the Court are foreclosed from referring to it as an insurance company and from mentioning insurance during trial. Second, Whitlock and

---

[1] Judge Heffley scheduled this trial date in an Order dated May 25, 2022. (Doc. No. 21.) On September 6, 2022, the Court held a status conference with counsel and confirmed that the case would proceed to trial on October 25. (Doc. Nos. 31& 32.)

Allstate each move for leave to present the videotaped depositions of their medical experts in lieu of live testimony at trial. The Court addresses each issue in turn.

I.

First, the Court analyzes Allstate's argument that it is unnecessary and would be prejudicial to mention "Allstate's presence in this matter by name" or make any "reference to insurance coverage." (Doc. No. 40 at 2.) During the final pretrial conference with the Court, Allstate proposed that it be allowed to proceed instead under the name of the nonparty tortfeasor. Allstate argues that any reference to insurance is precluded under Federal Rule of Evidence 411, unfairly prejudicial under Rule 403, and contrary to Pennsylvania law. (*Id.* at 1–4.) We begin with the Federal Rules of Evidence before turning to the relevant state court decisions.

A.

The Federal Rules of Evidence govern proceedings in the courts of the United States. Federal Rule of Evidence 411 states, "[e]vidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully."[2] Fed. R. Evid. 411. Here, Whitlock brings an underinsured motorists ("UIM") claim against his insurance company. Because recovery under this claim flows from the insurance contract, not the negligence of the underlying tortfeasor, Rule 411 does not apply. *See Schwendinger-Roy v. State Farm Mut. Auto. Ins. Co.*, Civil Action No. 11-445, 2012 WL 13034915, at *1 (W.D. Pa. July 10, 2012) ("Here, Plaintiff's potential recovery from Defendant flows from the parties' insurance agreement, not the underlying claim of negligence, and Defendant has failed to identify legal support for reading Rule 411 as broadly as it requests. Moreover, the case law found by the Court is to the contrary. Thus, Defendant's request that it

---

[2] Allstate also relies on Pennsylvania Rule of Evidence 411, which is identical to the Federal Rule. The Court's holding here applies equally to Allstate's arguments under both Rules.

2

not be identified as an insurer at trial is DENIED." (citations omitted)); *cf. Price v. Yellow Cab Co. of Phila*, 278 A.2d 161, 166 (Pa. 1971) (acknowledging "the well-recognized rule that evidence *in a personal injury action* which informs the jury that *the Defendant is insured against liability* is inadmissible" (emphasis added)).

Moreover, insurance in this case is not being used to show any party acted negligently, but instead to identify the defendant. *See Arch Chem., Inc. v. Radiator Spec. Co.*, No. 07–1339–HU, 2010 WL 5158269, at *2 (D. Or. Dec. 10, 2010) ("As a real party in interest, I find no persuasive precedent that Lexington [Insurance Company's] identity and role in this case should be kept from the jury. . . . Lexington is in the case as a plaintiff and will be treated as any other party during trial."); *Firoozifard v. Krome*, No. C-48-CV-2009-14369, 2010 WL 2666306, at *1 (Pa. Ct. of Comm. Pl. June 21, 2010) (allowing "evidence of Krome's Insurance" because it was not being offered "to establish his negligence," and "[t]hus, Pa.R.E. 411 would not require exclusion of the evidence . . . ."). Finally, we note that UIM coverage is an optional benefit, not *liability insurance* that would trigger Rule 411's protections. *See Stepanovich v. McGraw*, 78 A.3d 1147, 1150 (Pa. 2013) ("Pa.R.E. 411 prohibits the introduction of liability insurance into evidence; liability insurance is required coverage providing indemnity to the alleged tortfeasor for injuries caused to others. Underinsured motorist benefits are optional benefits purchased by a motorist for personal protection, but which do not provide indemnity to the tortfeasor." (citations omitted)).

Allstate also seeks relief under the broader provision of Rule 403, which states, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Rule 403 recognizes

that a cost/benefit analysis must be employed to determine whether or not to admit evidence; relevance alone does not ensure its admissibility." *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1344 (3d Cir. 2002).  In other words, "evidence may be excluded if its probative value is not worth the problems that its admission may cause, e.g. unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence." *Id.*

Allstate has not shown that the danger of unfair prejudice substantially outweighs the probative value of Allstate proceeding under its own name.  The company argues that "no valid purpose is served by having Allstate identified in any way to the jury." (Doc. No. 40 at 2.)  The Court strongly disagrees.  We cannot reiterate enough that Allstate is the *defendant* in this case, which is brought pursuant to an *insurance policy* that Allstate issued.  In other words, Allstate's identity and the fact of insurance are at the very heart of this matter.  Although the jury will not be asked to interpret any provision in the contract, that alone does not render insurance irrelevant, or give Allstate the right to proceed under the tortfeasor's name.  To the contrary, allowing Allstate to proceed as the tortfeasor—a nonparty with whom it has *no* relationship—would likely prejudice Whitlock, who chose to bring this case against Allstate and not the tortfeasor; prejudice the tortfeasor, who would be represented by a party with whom she has no connection and over whom she has no control; and confuse the jury, who would not know the true identity of one of the two parties in this case.

In sum, neither Rule 411 nor Rule 403 suggests the mention of insurance should be precluded in this action.

**B.**

In addition to the Federal Rules of Evidence, Allstate also points to Pennsylvania cases which hold, "evidence of insurance coverage is ordinarily inadmissible" because "the existence of coverage so frequently distracts the jury from the essential issues which it is to resolve in a detached manner." *Henery v. Shadle*, 661 A.2d 439, 444–45 (Pa. Super Ct. 1995). But none of the cases cited by Allstate considered the situation we have here—an insured suing their own insurance company for UIM coverage. Instead, most of the cases involved an injured party's negligence claim against the tortfeasor. *See Henery*, 661 A.2d at 444 (negligence action against tortfeasor); *Price v. Guy*, 735 A.2d 668, 671–72 (Pa. 1999) (negligence action against tortfeasor); *Price v. Yellow Cab Co. of Phila*, 278 A.2d 161, 166 (Pa. 1971) (negligence action against tortfeasor); *Trimble v. Merloe*, 197 A.2d 457, 458–59 (Pa. 1964) (personal injury action against tortfeasor); *Kaplan v. Love*, 194 A. 653, 654 (Pa. 1937) (negligence action against tortfeasor); *Lenahan v. Pittston Coal Min. Co.*, 70 A. 884, 884–85 (Pa. 1908) (personal injury action against tortfeasor); *Fleet Carrier Corp. v. Lahere*, 132 A.2d 723 (Pa. Super. Ct. 1957) (negligence action against tortfeasor); *Richey v. Loder*, 58 Pa. D. & C.4th 219, 222–24 (Pa. Ct. Comm. Pl. 2000) (negligence action against tortfeasor); *cf. Paxton Nat. Ins. Co. v. Brickajlik*, 522 A.2d 531, 630–31 (Pa. 1987) (explaining that when an insurance company brings a subrogation claim against the tortfeasor, it is standing in the shoes of the insured and thus, may proceed under the insured's name).

Few Pennsylvania cases address the precise situation before us because until 2005, "insureds were required to arbitrate underinsured motorist claims." *Lucca v. Geico Ins. Co.*, No CV 15-4124, 2016 WL 3632717, at *2–3 (E.D. Pa. 2016) ("Case law regarding this issue in Pennsylvania," i.e., evidentiary issues in this context, "is almost nonexistent."); *Bingham v.*

5

*Poswistilo*, No. 10 CV 6026, 2011 WL 8809426, at *3 (Pa. Ct. Comm. Pl. Apr. 8, 2011) ("Prior to 2005, the joinder of tort and UIM claims was a non-issue in this Commonwealth since UIM claims were resolved via binding arbitration by virtue of Insurance Department regulations mandating insurance policy language requiring arbitration of UIM claims."); *see Ins. Fed. of Pa., Inc. v. Comm'r, Dep't of Ins.*, 889 A.2d 550, 555 (Pa. 2005) (changing the legal landscape by holding that "the Department [of Insurance] does not possess the authority to require mandatory binding arbitration for UM and UIM disputes"). And although Allstate cites three cases decided after 2005, they—like the cases discussed above—are distinguishable, and thus, of limited help to the Court.

First, Allstate relies on *Firoozifard v. Krome*, a car accident case where the plaintiff brought a negligence claim against the tortfeasor and a UIM claim against his own insurance company (State Farm) in the same suit. No. C-48-CV-2009-14369, 2010 WL 2666306 (Pa. Ct. of Comm. Pl. June 21, 2010). The tortfeasor moved to sever the two claims, arguing that litigation of the UIM claim would necessarily involve a discussion of the *tortfeasor's* insurance policy, which he believed was inadmissible under Rule 411. *Id.* The trial court disagreed, finding that admission of the tortfeasor's policy would not violate Rule 411 because it was not being offered to establish the tortfeasor's negligence. Instead, it was being "offered to establish State Farm's contractual duty to provide UIM benefits to Plaintiff, as State Farm is entitled to a credit in the amount of [the tortfeasor's] coverage before it is required to pay [UIM] damages to Plaintiff under its policy." *Id.*

The tortfeasor then argued that any evidence of his insurance policy was unfairly prejudicial and should be excluded under Rule 403 because the mention of insurance would "cause the jury to shirk their responsibility as finders of fact and instead recklessly award

6

damages they presume will be paid by an insurance company." *Id.* Assuming, without deciding that this was true, the court found that "any such prejudice can be eliminated" by the court "present[ing] the caption to the jury in a manner that prevents State Farm from being identified" or "requir[ing] evidence of [the tortfeasor's] insurance to be presented outside the presence of the Jury." *Id.*

Although the court in *Firoozifard*, allowed State Farm to proceed anonymously, it did so because it was concerned about the potential prejudice *to the tortfeasor* if insurance was mentioned. Contrary to Allstate's suggestion, the court did not consider whether State Farm—the plaintiff's UIM carrier—would be harmed at trial by the mention of insurance.

Second, Allstate references *Stepanovich v. McGraw*, another car accident case. 78 A.3d 1147 (Pa. 2013). In *Stepanovich*, like in *Firoozifard*, the plaintiff brought a negligence claim against the tortfeasor and a UIM claim against his own insurance company (again, State Farm) in the same suit. *Id.* at 1148. Before trial, the tortfeasor moved to bifurcate the two claims, arguing that the inclusion of State Farm "created a scenario in which the admission of insurance into evidence will have to take place at trial." *Id.* The trial judge agreed and ordered that the trial proceed without any reference to insurance or to State Farm as a party. *Id.* at 1149. The jury found the tortfeasor was not negligent, and the plaintiff moved for a new trial, arguing that he was "prejudiced by having two parties with the same interests taking an active role against him when one of the parties was not identified." *Id.* at 1150. The trial court agreed, "ruled that not identifying State Farm as a defendant to the jury violated [the plaintiff's] procedural due process rights[,] and granted a new trial." *Id.* On appeal, the Pennsylvania Supreme Court reversed, finding that even if the plaintiff "was entitled to inform the jury of State Farm's participation, he is still not entitled to relief" because he failed to show that he had been prejudiced by the failure

7

to identify State Farm. *Id.* at 1151. In other words, the failure to identify State Farm had no bearing on the jury's ultimate determination that the tortfeasor was not negligent. *Id.*

As this summary shows, the Pennsylvania Supreme Court provided little guidance in *Stepanovich* on whether the trial court erred by precluding any mention of State Farm. But what little guidance it did provide—on the applicability of Rule 411—does *not* support Allstate's position here:

> Without specifically stating it, the trial court's resolution also recognizes by necessity that Pa.R.E. 411 does not apply to the instant situation regarding State Farm's participation in the trial. Rather, Pa.R.E. 411 prohibits the introduction of liability insurance into evidence; liability insurance is required coverage providing indemnity to the alleged tortfeasor for injuries caused to others. Underinsured motorist benefits are optional benefits purchased by a motorist for personal protection, but which do not provide indemnity to the tortfeasor. Therefore, a course of action identifying State Farm as a party would not necessarily run afoul of either Rule 411 or the [court's] order [prohibiting the mention of insurance]." (citations omitted)).

*Id.* at 1150.

Last, Allstate references *Bingham v. Poswistilo*, yet another case considering "whether an injured claimant's tort action and UIM claim may be consolidated in a single proceeding." No. 10 CV 6026, 2011 WL 8809426, at *3 (Pa. Ct. Comm. Pl. Apr. 8, 2011). Once again, the court considered whether the *tortfeasor defendant* would be prejudiced by the introduction of evidence about insurance if the two claims were tried together. *Id.* at *2. After an exhaustive discussion of the relevant case law, the court concluded that "tort actions and UIM claims may be joined in a single proceeding, at least for pre-trial purposes," after which, the trial court has discretion to "determine whether to sever the tort and UIM claims for separate jury trials or to try them as consolidated claims." *Id.* at *11. And even if the court chooses to try them together, the judge has the discretion to "allow the UIM insurer to be identified" or to "try the consolidated case as a tort action without disclosing the identity or involvement of the UIM insurer." *Id.*

8

Unlike *Firoozifard*, *Stepanovich*, and *Bingham*, the tortfeasor is not a party to this action, and thus, we need not consider the potential prejudice to her if insurance is mentioned. Allstate has failed to identify any Pennsylvania case that counsels against the mention of insurance where the plaintiff seeks UIM coverage and the only defendant is the plaintiff's insurance company.

\* \* \*

In sum, Allstate has failed to identify any reason for departing from the normal rule that parties proceed under their own names at trial. Neither has it shown that it would be unfairly prejudiced by the mention of insurance in this case. Thus, Allstate's request to preclude the mention of insurance at trial is denied.[3] *See Schwendinger-Roy*, 2012 WL 13034915, at *1 (denying the defendant insurer's request that it not be identified as an insurer at trial).

## II.

Next, we turn to the parties' request to use the videotaped depositions of their expert witnesses instead of live testimony at trial. (Doc. Nos. 38 & 39.) Whitlock seeks leave to use the deposition of his medical expert, Dr. Geoffrey Temple, D.O.,[4] and Allstate asks that it be allowed to use the depositions of its medical experts, Dr. Sachin Dheer, M.D. and Dr. Timothy Amann, D.O. (Doc. Nos. 38 & 39.) According to the parties, all three doctors are unavailable to testify at trial because they have "a full schedule of patients and other commitments" on October 25. (Doc. No. 38 ¶ 5; Doc. No. 39 at ¶ 5.) The parties also note that neither motion is opposed

---

[3] Allstate also suggested that it will have the tortfeasor seated at the table with defense counsel during trial. Because we deny Allstate's request to proceed under the tortfeasor's name, we likewise decline Allstate's request to have the tortfeasor seated at counsel table. She is not a party representative or in any way affiliated with Allstate, and her presence at counsel table is both inappropriate and likely to confuse the jury.

[4] During the final pretrial conference, Whitlock also sought leave to rely on the deposition testimony of his expert life care planner, Ms. Nadene Taniguchi, R.N. In his motion, Whitlock has withdrawn that request, noting that Nurse Taniguchi is available to testify at trial.

and that they "have agreed to present the testimony of their experts . . . by way of video-taped deposition." (Doc. No. 38 at ¶ 8; Doc. No. 39 at ¶ 7.)

Federal Rule of Civil Procedure 43(a) embodies the federal courts' preference for live trial testimony:  "At trial, the witnesses' testimony must be taken in open court unless a federal statute, the Federal Rules of Evidence, these rules or other rules adopted by the Supreme Court provide otherwise." Fed. R. Civ. P. 43(a).  Federal Rule of Civil Procedure 32 provides a limited exception to Rule 43(a)'s mandate, outlining when and how a party may use a deposition at trial. One such circumstances is when a witness is unavailable because of death, age, illness, infirmity, or imprisonment; because "the witness is more than 100 miles" from the courthouse; because "the party offering the deposition could not procure the witness's attendance by subpoena"; or because "exceptional circumstances make it desirable—in the interest of justice and with due regard to the importance of live testimony in open court—to permit the deposition to be used." Fed. R. Civ. P. 32(a)(4)(A)–(E).

Here, the parties move under this last, catch-all category, arguing that exceptional circumstances warrant allowing them to present expert depositions at trial.[5]  Courts have been

---

[5] The Court is generously reviewing the parties' briefs as raising the issue under Rule 32(a)(4)(E). It would be more accurate to say that the parties quote the Rule at the beginning of the "Legal Argument" section of the briefs, but fail to discuss its meaning, analyze its applicability, or cite any cases to support their position that deposition testimony is admissible under that Rule.  The Court is particularly frustrated by the parties' failure to discuss Rule 32(a)(4)(E) because during the final pretrial conference, the Court cited the rule and specifically asked the parties to brief the admissibility of the deposition testimony *under that Rule*.  *See Allgeier v. United States*, 909 F.2d 869, 876 (6th Cir. 1990) ("The party seeking to admit a deposition at trial must prove that the requirements of Rule 32(a) have been met.").  Instead, the parties rely on Federal Rule of Evidence 43(a), which *mandates* live testimony unless another rule provides otherwise.  Rule 43(a), obviously, does not support the parties' position.  Allstate also references Pennsylvania Rule of Civil Procedure 4020, which allows a party to use "a video deposition of a medical witness or any witness called as an expert, other than a party, . . . at trial for any purpose whether or not the witness is available to testify." Pa. R. Civ. P. 4020(g).  Pennsylvania Rule 4020 is at odds with Federal Rule of Civil Procedure 32(a)(4), and thus, has no bearing on this Court's decision.  *See Chamberlain v. Giampapa*, 210 F.3d 154, 159 (3d Cir. 2000) ("Where a Federal Rule of Civil Procedure provides a resolution of an issue, that rule must be applied by a federal court sitting in diversity to the

reluctant to broadly interpret Rule 32(a)(4)(E), finding that a liberal interpretation would "effectively eviscerate the other provisions of Rule 32(a)(4)" and "undermine the importance of presenting live testimony." *Kirby v. J.C. Penney Corp., Inc.*, No. 2:08–cv–1088, 2009 WL 3651199, at *2 (W.D. Pa. Oct. 29, 2009); *see also Griman v. Makousky*, 76 F.3d 151, 153 (7th Cir. 1996) (finding that the district court did not abuse its discretion when it denied the plaintiff's motion to rely on the deposition of a witness, who could not be located despite counsel's "strenuous efforts" to find him because the "release and subsequent disappearance of a jail inmate are not an exceptional combination of events").

Although the Third Circuit has not analyzed when "exceptional circumstances" exist under Rule 32(a)(4)(E), at least four other Circuits have required some showing of the witness's unavailability before allowing a party to present a deposition in lieu of live testimony at trial. *See McDowell v. Blankenship*, 759 F.3d 847, 851 (8th Cir. 2014) ("We agree Rule 32(a)(4)(E) permits deposition testimony where, in the district court's judgment, live testimony from the deponent is impossible or highly impracticable, and the interests of justice, with due regard to the importance of live testimony in open court, counsel in favor of admissibility." (quotation marks omitted)); *Griman*, 76 F.3d at 153 ("The other subsections of Rule 32(a)(3) make clear that it is not only a party's need for the evidence in the deposition, but also the nature of the circumstances that have made the deponent unavailable to testify, that determines whether the circumstances can be thought exceptional."); *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 963–64 (10th Cir. 1993) ("The Angelos also stress the severe prejudice they suffered, but as *Allgeier* suggests, the 'exceptional circumstances' must be a reason the deponent cannot appear, not merely serious prejudice that would result if the court did not admit the deposition

---

exclusion of a conflicting state rule so long as the federal rule is authorized by the Rules Enabling Act and consistent with the Constitution.").

testimony."); *Allgeier v. United States*, 909 F.2d 869, 876 (6th Cir. 1990) ("[A]bsent more persuasive evidence of unavailability, there was an abuse of discretion in allowing use of the depositions here.").

Many district courts in this Circuit have similarly required some exceptional showing of unavailability before admitting deposition testimony. *See Emmi v. DeAngelo*, 261 F. Supp. 3d 556, 560 (E.D. Pa. 2017) ("Given Mrs. Emmi's proper invocation of the [spousal] privilege and refusal to testify, the Court finds that she is 'unavailable' for purposes of Federal Rule of Civil Procedure 32 . . . ."); *Kirby*, 2009 WL 3651199, at *2 (granting the defendant's motion to preclude the plaintiff from relying on a videotaped deposition at trial because the plaintiff failed to show that the witness was unavailable); *Flores v. N.J. Transit Rail Ops., Inc.*, No. CIV.A. 96–3237, 1998 WL 1107871, at *5 (D.N.J. Nov. 2, 1998) ("The inquiry whether there are 'exceptional circumstances' has been whether the situation is appropriately analogous to the unavailability of a witness because of a death; the witness's distance greater than 100 miles from the courthouse; the witness's age, illness, infirmity or imprisonment; or the party's inability to procure the witness through subpoena." (quotation marks omitted)); *Melore v. Great Lakes Dredge & Dock Co.*, Civ. A. No. 95–7644, 1996 WL 548142, at *3 (E.D. Pa. Sept. 20, 1996) ("The court found the reasons given in her letter for her absence to be compelling and advised counsel at a sidebar conference of its decision to admit the deposition, based on Dr. Fortunato's unavailability.").

Here, Whitlock argues that exceptional circumstances exist for allowing the videotaped testimony of his medical expert because the parties agreed to allow the presentation of video depositions at trial, Dr. Temple states he is "unable to appear in court on October 25, 2022 due to having a full schedule of patients," and without Dr. Temple's testimony, Whitlock will be unable

to provide evidence of causation. (Doc. No. 38-2 at 2–3; Doc. No. 38-4.) Allstate similarly argues that its medical experts have a "full schedule of patients and other commitments," and that without the videotaped depositions, for "which experts have already been paid in excess of $5,000," Allstate "will be unable to defend the injury claimed by Plaintiff." (Doc. No. 39 at 5, 8.) The only reason given by either party as to the doctors' availability, is the assertion that each doctor has a "full schedule of patients." *See Griman*, 76 F.3d at 153 ("The other subsections of Rule 32(a)(3) make clear that it is not only a party's need for the evidence in the deposition, but also the nature of the circumstances that have made the deponent unavailable to testify, that determines whether the circumstances can be thought exceptional.")

    District courts across the country are split on whether a physician's full patient load is an exceptional circumstance under Rule 32(a)(4)(E). *Compare, e.g.*, *Flores*, 1998 WL 1107871, at *5 ("I accept that plaintiff's medical experts are specialists in their fields and have busy schedules. However, to accept that such facts constitute 'exceptional circumstances' would eviscerate the presumption in our jurisprudence favoring live testimony."), *Bobrosky v. Vickers*, 170 F.R.D. 411, 414–15 (W.D. Va. 1997) (finding no exceptional circumstances for allowing physicians' depositions despite the "great expense" incurred taking those depositions, the defendant's "expectation that they would be used at trial," the doctor's "busy practices," and the defendant's expectation that the doctors would become "angry or hostile if subpoenaed to the trial after giving such lengthy depositions"), *and Santana v. Mack*, 889 F. Supp. 223, 226 (D.V.I. 1995) ("We find no basis for invoking the exceptional circumstances provision of Rule 32(a)(3)(E) or for concluding that the trial court should have granted a continuance. Appellant made no effort to serve Dr. Pedersen," his medical expert, "with a subpoena, nor did he attempt to show that they had been unable to procure the doctor's attendance, which is a prerequisite to

13

using a discovery deposition in lieu of live testimony."), *with, e.g., Hague v. Celebrity Cruises, Inc.*, No. 95CIV.4648(BSJ)(JCF), 2001 WL 546519, at *2 (S.D.N.Y. May 23, 2001) (admitting physician's deposition where he was unavailable due to his patient load, the deposition was videotaped, and the parties stipulated to the introduction of the deposition at trial), *and Melore*, 1996 WL 548142, at *3 (finding exceptional circumstances where the defendant took an extensive deposition of the physician and subpoenaed her presence at trial, but the physician moved to quash the subpoena because she had a full schedule, commitments to her patients, and was the primary caregiver for a sick family member).[6]

Here, we are inclined to follow *Flores* and similar cases. Notably, those cases are in line with the opinions of the two circuit courts to address this precise situation. *See Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 963–64 (10th Cir. 1993) (finding medical expert's "extremely busy" schedule was not an exceptional circumstance under Rule 32(a)(3)(E)); *Allgeier*, 909 F.2d at 876 (finding an abuse of discretion where the trial court allowed the use of a doctor's deposition because the court incorrectly concluded that it was federal practice to regard doctors as "automatically unavailable," and the deposition's proponent conceded that the doctor had "offices both within and outside the district" and counsel "could subpoena him if

---

[6] Two other district court opinions allowed similar testimony, but their holdings, which were entered before most of the appellate court decisions discussed above, were not based on the unavailability of the witness. *See Borchardt v. United States*, 133 F.R.D. 547, 548 (E.D. Wis. 1991) (allowing the plaintiff to present the deposition testimony of his medical expert where the expense of having him testify in person was greater than having him testify via a deposition, and the plaintiff's total claim was only $12,402.19); *Reber v. Gen. Motors Corp.*, 669 F. Supp. 717, 720 (E.D. Pa. 1987) ("We found that there were special circumstances, *viz.*, the doctor's busy schedule following his [unexpected] return [to the district] and the admitted expectation that the videotape would, when filmed, be used at trial. We concluded that these considerations warranted its use *in the interest of justice and judicial economy*, as permitted by Fed. R. Civ. P. 32(a)(3)(E)." (emphasis added)). Likewise, one district court found a physician's full case load was an exceptional circumstance under Rule 32 but chose to reschedule the testimony instead of admitting the deposition. *See Rubel v. Eli Lilly and Co.*, 160 F.R.D. 28, 29 (S.D.N.Y. 1995) (finding exceptional circumstances where the doctor-witness was in a practice group of four physicians and, because of the uncontrollable absence of the other three doctors, had to temporarily handle the entire practice alone).

necessary"). Considering *Angelo* and *Allgeier*, we find it telling that the only steps taken by counsel to procure the experts' attendance is their request, in early October, that the physicians voluntarily attend the trial. The parties have known the date for trial since May 25, 2022. (*See* Doc. No. 21.) Yet, neither party subpoenaed their experts or suggested a subpoena would be ineffective. And all three physicians have offices in the greater Philadelphia area.[7]

Moreover, we cannot find it "exceptional" for a physician to have a full patient load. Indeed, having a full work schedule is not a coincidence limited to physicians. *See Bell v. CSX Transp., Inc.*, Civil Case No. 00–40264, 2002 WL 34714566, at *3 (E.D. Mich. Apr. 4, 2002) ("Plaintiff's only evidence that Dr. Mendiratta is unavailable due to 'exceptional circumstances' is the doctor's affidavit, in which she avers that a court appearance would constitute an 'extreme hardship' to her and her patients because she would have to close her office for the day and cancel appointments. These generalized contentions would appear to apply to almost every doctor, resulting in essentially a per se rule that doctors are unavailable to testify because of the nature of their profession."); *Flores*, 1998 WL 1107871, at *5 ("I appreciate the importance of medical specialists and their schedules. However, similar arguments could be routinely employed on behalf of others in occupations and professions.").

And there is no evidence that any physician's case load is out of the ordinary for them, such that extenuating circumstances render their attendance impossible or highly impracticable on the date of trial. *See Rubel*, 160 F.R.D. at 29 (finding exceptional circumstances where the doctor-witness was in practice group of four physicians and, because of the uncontrollable absence of the other three doctors, had to temporarily handle entire practice alone); *see also*

---

[7] A search of publicly available information shows that all three experts have an office within 40 miles of the courthouse. Given their relative proximities, the Court is willing to offer some flexibility in the timing of each expert's trial testimony to allow them time to come to the courthouse.

*McDowell*, 759 F.3d at 851 (holding that the district judge did not abuse its discretion by introducing the deposition testimony of a witness who was overseas in the army at the time of trial because procuring his live testimony would have been "highly impracticable"); *Griman y*, 76 F.3d at 153 (finding that the district court did not abuse its discretion when it denied the plaintiff's motion to rely on the deposition of a witness, who could not be located despite counsel's "strenuous efforts" to find him); *Emmi*, 261 F. Supp. 3d at 560 (allowing the defendants to read the plaintiff's wife's deposition, describing a 911 call that she made prior to the incident at issue because (1) the wife had asserted her spousal privilege refusing to testify against her husband, and (2) the recording of the 911 call was not available).

Because neither party has demonstrated "exceptional circumstances" for allowing the videotaped depositions, the Court denies the motions to present deposition testimony at trial.

### III.

Allstate's request to prohibit any reference to insurance at trial is denied. The parties' motions to present videotaped deposition testimony at trial is also denied.

An appropriate Order follows.